**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| YUSUF WARRICK, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. 25-CV-0076 |
| | : | |
| v. | : | |
| | : | |
| GINA CLARK, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                             **APRIL 8, 2025**

Yusuf Warrick, a convicted prisoner currently housed at SCI Houtzdale, filed this civil action against several employees of the Commonwealth of Pennsylvania Department of Corrections ("DOC") concerning events that occurred at SCI Chester.[1] For the following reasons, the Court will dismiss Warrick's Complaint with prejudice.

**I.    FACTUAL ALLEGATIONS**[2]

---

[1] The named Defendants are Superintendent Gina Clark; Security Captain Reeder; Hearing Examiner T. Knepper; Security Lieutenant L.D. Kirkland; Deputy Superintendent Bowman; Correctional Classification Program Manager Neko Bourne; and Major A. Reber. (*See* Compl., ECF No. 1.)

[2] The factual allegations set forth in this Memorandum are taken from the Complaint, which consists of the Court's preprinted form available for prisoners to file civil rights claims, as well as several handwritten pages and attached exhibits. The Court may consider exhibits attached to the complaint and matters of public record when conducting a screening under § 1915. *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)); *Harris v. U.S. Marshal Serv.*, No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011) ("In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and hence, under the screening provisions of the PLRA.") (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). The Court adopts the sequential pagination supplied by the CM/ECF docketing system to the entire submission. Punctuation, spelling, and capitalization errors in the Complaint will be cleaned up.

On August 7, 2024, Warrick's mother Karen Jones visited him at SCI Chester, where he was incarcerated at the time. (Compl. at 15.) According to the October 15, 2024 misconduct report Warrick attached to the Complaint, while Jones was in the vending area of the visiting room she hid a package containing illicit drugs in a Styrofoam tray, handed it to non-party inmate Rivera, who then passed it to Warrick. (Compl. at 20.) Search Team Officers including Defendant Kirkland stopped Warrick and discovered the contraband. (*Id*.) Warrick was then placed in the Restricted Housing Unit ("RHU"). (*Id*. at 23.) On August 21, 2024, Warrick submitted a "Request Slip" to Defendant Clark, the Superintendent of SCI Chester, maintaining his innocence and alleging that he was being mistreated by correctional staff, but she declined to release him from the RHU. (*Id*. at 12.)

Also on August 21, 2024, Warrick was interviewed by Defendant Reeder. (*Id*. at 13.) When Reeder accused him of having attempted to smuggle drugs into the prison, Warrick professed his innocence stating he "didn't have anything to do with drugs." (*Id*.) During the interview, Reeder viewed the CCTV footage from the incident, which Warrick expected to exculpate him, but at the end of the interview Reeder ordered Warrick returned to the RHU. (*Id*.)

On October 15, 2024, Warrick was formally charged in Misconduct Report No. F333788, signed by Defendant Kirkland, with (1) possession or use of a dangerous or controlled substance; and (2) failure to report the presence of contraband. (*Id*. at 20.) In advance of an October 17, 2024, disciplinary hearing on the charges, Warrick submitted a written statement regarding the August 7, 2024 incident to the Hearing Examiner, Defendant Knepper, describing his version of the events that day and maintaining his innocence. (*Id*. at 24.) At the disciplinary hearing, Warrick pled not guilty, testified orally to the same facts contained in his written statement, and signed a waiver permitting Knepper to review the CCTV footage of the August 7, 2024 incident.

(*Id*. at 14, 23.)  Knepper allegedly reviewed some but not all of the footage and found it was inconclusive.  (*Id*. at 23.)  He ultimately credited the officers' version of events in the misconduct report, and found Warrick guilty of the charge of possession or use of a dangerous or controlled substance.  (*Id*. at 14, 23.)

On November 13, 2024, Warrick filed an appeal of his guilty finding through the prison's misconduct hearing appeal process.  (*Id*. at 16.)  Defendants Bowman, Bourne, and Reber, who are members of the prison's Program Review Committee ("PRC"), did not respond to Warrick's appeal within the seven days required under applicable provisions of DC-ADM 801, which governs the handling of misconduct appeals.  (*Id*. at 16-18.)

The Court understands Warrick to assert various due process claims under the Fourteenth Amendment against all seven Defendants.  As relief for his claims, Warrick seeks to have his disciplinary charge expunged, his mother placed back on his visitor list, to be restored to his job as a visiting room janitor, reinstated as a dog handler with back pay, and restored to the Honor List.  (*Id*. at 5.)

## II.     STANDARD OF REVIEW

Although Warrick has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*).  Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious,

or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (abrogation on other grounds recognized by *Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (3d Cir. 2024). Conclusory allegations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105,

2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III.   DISCUSSION

Warrick alleges various claims under the Fourteenth Amendment arising from the disciplinary process.³ (Compl. at 3.) The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

#### A.   Fourteenth Amendment Due Process Claims

Warrick alleges due process claims against (1) Defendants Clark, Reeder, and Knepper based on his placement and retention in the RHU; (2) Defendant Kirkland based on his filing an allegedly false misconduct report; (3) Defendant Knepper for his handling of Warrick's

---

³ Warrick contends in a passing reference that Defendants Clark, Reeder, Knepper, and Kirkland subjected him to "cruel and unusual punishment" in violation of the Eighth Amendment. A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). Because Warrick challenges the fact of his confinement in the RHU rather than particular conditions of his confinement there, the Court construes these claims as brought under the due process clause of the Fourteenth Amendment.

disciplinary hearing; and (4) Defendants Bowman, Bourne, and Reber based on their failure to respond in writing to Warrick's appeal from his guilty finding at the misconduct hearing. (*See* Compl. at 12-18.)

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). In the prison disciplinary context, "[d]ue process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In applying *Sandin*, courts deciding whether conditions are an atypical and significant hardship for purposes of establishing a liberty interest must consider "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486). Absent a protected liberty interest, a prisoner cannot maintain claims regarding alleged procedural defects prior to and during his misconduct proceedings.

1. **Claim Based on False Misconduct Report**

Warrick asserts that Defendant Kirkland violated his Fourteenth Amendment due process rights by "fabricating" the misconduct report that resulted in Warrick's detention in the RHU. (Compl. at 15.) However, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*), as "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith*, 293 F.3d at 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."). Warrick concedes that he was afforded an opportunity to be heard and defend against Kirkland's allegedly false misconduct allegations through both written and oral testimony. (Compl. at 22-24.) Accordingly, the mere fact that Kirkland may have filed a false misconduct report is insufficient to allege a plausible Fourteenth Amendment claim against him.

2. **Claims Based on Placement and Retention in RHU**

Warrick asserts that Defendants Clark, Reeder, and Knepper violated his civil rights by placing him in the RHU after the August 7, 2024 incident and denying his requests to be released based on his professed innocence. (Compl. at 12-14.) It is well-settled that placement in disciplinary or administrative segregation for even prolonged periods does not by itself constitute an atypical and significant hardship. *See Griffin*, 112 F.3d at 706 (no liberty interest triggered by 15-month confinement in administrative custody); *Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (no liberty interest triggered by 90-day placement in disciplinary segregation); *see also Smith*, 293 F.3d at 654 (no liberty interest triggered by seven-month placement in

7

disciplinary confinement); *Torres v. Fauver*, 292 F.3d 141, 151–52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest); *Nifas v. Beard*, 374 Fed. Appx. 241, 244 (3d Cir. 2010) ("confinement in AC for 178 days and a 90-day placement on the RRL does not amount to an 'atypical and significant hardship' when compared to the ordinary incidents of prison life"); *Sanchez v. Walton*, 2019 WL 249537, at *2-3 (E.D. Pa. Jan. 16, 2019) ("ninety (90) day confinement in segregation is insufficient to establish that [inmate] was deprived of a liberty interest' "). Warrick does not allege that he was subject to harsh conditions while in the RHU; he only asserts in conclusory language that his RHU placement was itself "cruel and unusual punishment." (Compl. at 12.) Because Warrick does not assert harsh conditions in the RHU or that the length of his confinement constituted an atypical and significant hardship, he fails to allege a liberty interest that was implicated by his placement in the RHU. Accordingly, he has not alleged a plausible due process violation against Defendants Clark, Reeder, and Knepper based on his placement in the RHU pending the adjudication of his misconduct charge.

### 3. Claim Based on Disciplinary Hearing

Warrick contends that Defendant Knepper violated his due process rights by failing to review all of the available CCTV footage for the August 7, 2024 incident and finding Warrick guilty of misconduct following an incomplete investigation. (Compl. at 14.) Because Warrick is a convicted prisoner and thus entitled only to limited due process protections, his claim against Knepper is also not plausible. *See Sandin*, 515 U.S. at 481 (stating that the full panoply of due

process protections described in *Wolff v. McDonnell*, 418 U.S. 539 (1974) were inapplicable to disciplinary proceedings involving convicted prisoners).[4]

Moreover, the Complaint and attached exhibits reflect that Warrick was notified of the disciplinary hearing and afforded an opportunity to be heard through both a written statement and oral testimony (Compl. at 22-24), which satisfied Warrick's due process rights. *Wilkinson v. Austin*, 545 U.S. 209, 225-26 (2005) (observing that notice and an opportunity to be heard are the essential components of due process); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

The assertion that Defendant Knepper did not view all of the available CCTV footage is insufficient to allege a due process claim because "a thorough investigation is not a requirement of due process in the prison disciplinary setting." *See Parks v. O'Shaughnessy*, No. 14-1268, 2016 WL 4385869, at *4 (M.D. Pa. May 3, 2016); *see also Moles v. Holt*, 221 F. App'x 92, 96 (3d Cir. 2007) (concluding that "a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation"). And while Warrick disagrees with the guilty finding, he does not allege that Knepper's decision was unsupported by any evidence; indeed, Knepper's disciplinary hearing report specifically cited Kirkland's misconduct report in support of the guilty finding, which is sufficient to satisfy the Fourteenth

---

[4] *Wolff* had previously set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.* at 563-67. In addition, the Supreme Court held that there must be "some evidence" which supports the conclusion of the disciplinary tribunal. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

Amendment. *See Hill*, 472 U.S. at 455. Thus, Warrick fails to allege a plausible Fourteenth Amendment due process claim against Defendant Knepper.

### 4. Claims Based on Appeals Process

Finally, Warrick asserts due process claims against Defendants Bowman, Bourne, and Reber based on their failure to respond to his misconduct hearing appeal. (Compl. at 16-18.) He asserts that, under DC-ADM 801, the PRC members are required to "provide a brief written statement to the inmate of the reasons for its decision within seven working days of receipt of an appeal." DC-ADM 801, Section 5(A)(9). Warrick states that on November 13, 2024, he submitted an appeal of his guilty finding but Bowman, Bourne, and Reber provided no response as required by DC-ADM 801. (Compl. at 16-18.)

The allegation that Bowman, Bourne, and Reber failed to follow DC-ADM 801 cannot be the basis of a plausible due process claim under *Sandin* since Warrick received notice and an opportunity to be heard. *See Macia v. Williamson*, 219 F. App'x 229, 233 (3d Cir. 2007) (*per curiam*) ("The prison's failure to follow its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due . . . ."); *Houser v. Evans*, No. 20-269, 2020 WL 3574744, at *2 (D. Del. July 1, 2020) (holding that an allegation that disciplinary appeal was not heard, or was heard and that correctional officers failed to give prisoner the results, and/or the appeal form was fabricated, failed to state a due process claim under the *Sandin* regime). Moreover, as many courts have held, "corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this

10

questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (citing *Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)).  Thus, even if Defendants Bowman, Bourne, and Reber failed to comply with DOC policies, this does not allege a plausible constitutional violation.  Accordingly, Warrick's Fourteenth Amendment claims against these three Defendants will be dismissed with prejudice.

## IV.    CONCLUSION

For the reasons stated, the Court will dismiss Warrick's Complaint for failure to state a claim pursuant to 28 U.S.C. 1915A(b)(1).  As an attempt to amend the claims would be futile, the dismissal will be with prejudice.[5]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002) (stating amendment should be granted unless it would be futile).  An appropriate Order will be entered separately.  *See* Federal Rule of Civil Procedure 58(a).

                                                                **BY THE COURT:**

                                                                /s/ John Milton Younge
                                                             **JOHN MILTON YOUNGE, J.**

---

[5] Given this resolution, the Court does not need to address the propriety of Warrick's official capacity claims or the types of relief he seeks.